Next case on this afternoon's docket is the case People of the State of Illinois v. William Doedtman And we have Mr. Monroe McClure for the appellant And we have Ms. Jennifer Campin for the appellate So you may proceed, Mr. McClure Good afternoon. As you should know, my name is Monroe McClure Here on behalf of Mr. Doedtman and the appellant May it please the court What I would like to do is proceed to the fourth argument The first three are not as important as I believe the fourth argument is The fourth argument is primarily dealing with the issue of whether or not my client was sensible Disproportionately to the other three people The fourth thing I want to make sure is in the record That we understand is that the other gentleman that was in the case was He was on parole at the time these crimes were committed And he was sentenced to a year back in the Department of Correction In terms of his parole violation based on these charges, these two felony charges But if you look at the two ladies that were also involved in co-conspiracy with my client One got six days in jail, a misdemeanor conviction Another one got ten days in jail, a misdemeanor conviction And both of them had criminal backgrounds, criminal histories You can make an issue of the fact that we didn't go into the specifics of the criminal backgrounds It doesn't make any difference because my client, Mr. Devon, had no criminal background Zero, zero, zilch, none He was, I think it's fair to say, a pain He was difficult to deal with He went through three attorneys Each one of the attorneys are seasoned attorneys They had a long background in representing people in criminal matters The final one was Mr. Ken Gano out of Charleston He didn't last very long But the point is, I think it's important to look at the facts in this situation And understand that in the sentencing of my client They looked at what my client had done, the testimony, the other defendants But to give my client a sentence which is Let's see if I did the math here Thirteen times what Ms. Hood's sentence was And to give him a sentence which is 7.8 times what Ms. Bannock's sentence is And all of that in view of the fact that you have one gentleman that's a convicted felon And these other ladies have misdemeanor convictions It's disproportionate It's very obviously disproportionate And it's an abuse of discretion And it would appear to me that this is a type of thing that the court would want to address By sending it back for a new trial and or sentencing It's so very clear from the standpoint of my client's lack of any criminality And all three of the other folks had criminality And as I say, my client, you're looking at 13 times Hood's sentence and 7.8 times Bannock's And of course the other gentleman was sentenced But his, I think it's hard to look at that Because he was supposed to be on the same level with my client as far as how much he was involved with But the real issue there is, is criminal back So for those reasons we think this should go back With regards to argument number one We know under the Supreme Court case for La Feretta v. California That standby counsel for a pro se defendant is recommended Or is an issue the court can consider in overcoming routine procedural obstacles And to assist the defendant's compliance with the basic rules of the courtroom protocol and procedure I would ask the court to refer to Appellee's brief, page 9 When it refers to the record C586 This is when the defendant, Mr. Dettman, said What I don't understand is that we did not plan to smash the mailbox We didn't This is a perfect example of why he should have had a standby attorney If he couldn't have gotten along and wanted to be represented himself This is a good example of what this young man understood was going on here He didn't even understand at that point why he was still charged Do you have any cases that would require the judge under these circumstances? I do not, I don't I have to make some case law Yeah, it was tough He was his own worst enemy, basically, wasn't he? Oh, absolutely If you go back to the beginning of the country The Boston Massacre was a tremendously unpopular trial And one of our founding fathers was representing the British soldiers in that trial John Adams And it was a tough trial And it was dealing with tough issues And I see this as the same situation This young man didn't understand He didn't want to cooperate The point is that the soldiers didn't want to cooperate with Adams in the preparation for the trial But they did, they got through it, they overcame all the problems This young man was so out of touch with the facts and the law He couldn't get along with any of his attorneys But don't you think the better course of action for the judge would have been And they do it in federal court all the time Okay, Mr. Devin, we understand you don't want anybody representing you But I think I am compelled, after reviewing the things you say And after reviewing the things that go on here And after reviewing the fact that you don't have a clue, really, what's going on here And that's in the record If you look at the record, you see that he has absolutely no clue No idea about what's going on And that's witnessed by his statements there I'm not going to appoint you an attorney to represent you But I'm going to appoint an attorney to stand over here And sit over here during the trial And that attorney is not going to volunteer help to you But he's going to be there for you to ask questions This evidences that he doesn't even understand what he's charged with during the trial What would have hurt... Pardon me, that word What would have hurt, what would have caused What would have caused any problems To have the attorney sitting next door to him at counsel table as standby Nothing It would have enhanced the process Because what I see the problem also in this trial was This young man had no belief or understanding in the system That he thought he was going to get a fair share You're right, he was his own worst enemy Just like Abbey Hoffman and Tom Hayden in the Chicago 7 were their own worst enemy I think they knew what they were doing They thought they had a purpose to what they were doing But Judge Julius Irving, he fed into what they were trying to do To disrupt the thing and make it into a circus And he gagged them and bound them and had them sit at the counsel table This young man wasn't that clever He was not trying to stop the proceedings I think that probably, at least I can agree that it would have been a good idea But how do we rule that the court was required to do that? I don't think the court is required In this circumstance I think the court is required on a case-by-case basis You've got a young man who sits there and says on the record I don't even know why I'm being charged That's a pretty good indication he doesn't understand One, what he's charged with, how to defend himself Or even what the process is So we would rule that the court abused its discretion In not assigning him a stand-by counsel I would say that, yes Because the solution and the remedy is so simple They've already appointed three attorneys It wasn't a hurt to have another attorney sit in It wasn't like they were going to destroy the public coffers And the public funds And if you look at the prescription for the problem And the cost-benefit analysis It's relatively simple And I agree, but we don't have that federal rule So how do we rule that it was error for the judge not to appoint a stand-by counsel? That's why I'm saying this is I don't have the case law I say you can use the footnotes from Forever To use that as the only case law you have And from that you can extrapolate the principle that In a situation where obviously he doesn't understand what really is going on That a stand-by counsel should at least be present Be available In hindsight, it's always easier to say Oh, we know you should have done it But from a practical standpoint, it should have been done What were they going to lose? What were they going to give up? Very clear this young man was very difficult to handle Seasoned attorneys, all three of them, walked away from the case When you've got red flags like that Don't you think that that is the time to have a stand-by attorney? So you can make a clear record And show that this young man was available With the opportunity to converse about this type of thing You're right, there's no case law on board There's nothing that helps us Other than a practical application And a practical understanding of really what's at issue You take that in conjunction with the fact that They charge new charges on the day of the hearing Or the day of the trial Yeah, but the new charges When I read that I was kind of surprised But the new charges were just that They were going to have somebody come in and say That was my mailbox, yeah, that was my mailbox And it was the wife of the other party So it wasn't a surprise by any means Don't you think that affected the credibility And the integrity of the system? You've got a guy that's a pro se, no stand-by attorney And he's being told, you know what? Not only don't you understand the process We're going to charge you with new charges as of today, the day of trial Well, when I looked at the charges I didn't think it was very shocking No, it's not, it's a logical thing to do, what Mr. Parker did But if you're a 19-year-old kid And you think that the system is working against you And you want to be at least understanding of what the system is And you want to trust the system They do that and they don't kindly answer your request for braiding materials These things add up And I think you take the first argument with regard to not having a stand-by attorney And the last argument with regard to the disproportionate sentencing I think the whole thing has a tendency to take away from the integrity of the system And I'm not... We all know we've been in difficult situations with clients And other people and states' attorneys and public defenders But, I mean, that's our job We have to be patient with people And we have to explain things to people until they understand them, until they get them And we can't give a defendant short shrift Just because we're tired of messing with them for lack of a better term Those are my arguments and I appreciate your time It's always a privilege and honor to be in the public court Thank you Thank you, Mr. McWhorton You'll have the opportunity to rebut Thank you Ms. Campin Thank you May I please report? Counsel? I think I'll begin with issue number one The appointment of stand-by counsel The argument that stand-by counsel should have been appointed We have to start with the fact that the defendant in this case did not request stand-by counsel in this case So the question that the defendant presents is whether the trial court abused its discretion In failing sua sponte to appoint stand-by counsel in this case And we should remember that, of course, the defendant had a constitutionally protected right to self-representation And the Illinois Supreme Court has held that a defendant has no right to stand-by counsel And even if the defendant had requested stand-by counsel Factors relevant to a motion for the appointment of stand-by counsel include And this is under the Taggart case, which is cited in the briefs The nature and gravity of the charge Here it was a class four felony The factual complexity of the case This is about four young people who had some drinks and smashed some mailboxes And then finally, the legal complexity of the case and the defendant's experience and abilities And while the defendant stresses that he had no legal experience or experience in the legal system It's plain that his abilities were equal to the legal tasks before him He aggressively sought discovery and cross-examined witnesses on the question of damages And whether damages had been proven over the $300 threshold for the felony charge And also aggressively cross-examined witnesses and sought discovery regarding the existence of an agreement Which was required to be proven for the conspiracy element, the element of an agreement And in those senses, his abilities were equal to the legal complexity of the case In response to the defendant's argument that he did not understand what he was charged with Referring to page nine of the People's Brief The defendant is referring to a transcript of the arraignment from February 25th, 2010 Where the judge, again, described the charges and potential penalties And asked the defendant whether he understood The defendant responded that he did not understand why he was being charged with conspiracy And the court read him the information Reminded him that he elected to proceed pro se and declined representation The court volunteered to the defendant to read And did read the pattern jury instructions on conspiracy and criminal damage to property Gave the defendant their citations Then the defendant responded, we did not plan to smash a mailbox, we didn't The judge then cautioned him that he was without an attorney And risk-making statements that could be used against him in court And that while he has the right to represent himself, he could not be forced to use an attorney The judge then told the defendant that the defendant could tell the court That he had changed his mind about self-representation And the judge offered to reappoint to the defendant one of those previously appointed attorneys And that's in keeping with the transcript of all of the pretrial proceedings Where we see that the defendant was repeatedly and strenuously warned about the dangers of self-representation While the judge did not sua sponte offer to appoint standby counsel The judge did sua sponte offer to appoint, to represent the defendant One of the previously appointed attorneys in this case And that's an important point here And finally the point that the defendant is making That standby counsel could have provided the defendant with help at trial Should be considered in light of the fact that standby counsel is only intended to provide Routine procedural help or help the defendant contend with evidentiary obstacles Not to legally advise the defendant as a counselor would There's no right to hybrid representation, representation both pro se and with the assistance of an attorney It appears that that is what the defendant truly seeks or sought It says that he seeks now, but of course did not seek at trial Because he did not request standby counsel Or at any time request that any previously appointed attorney be appointed for him The defendant alluded briefly to the fact that the state added a count to This was a lesser included offense Which actually was unnecessary to include because it was contained within the greater offense Also there was no prejudice because the defendant was not actually convicted or sentenced On that lesser offense, he was sentenced on the greater offense And then finally with regard to the sentencing issue Of course the sentence was not an abuse of discretion The sentence of 78 days to which the defendant got day for day So he was served a total of 39 days on weekends And there were 39 mailboxes smashed in this case The judge crafted this sentence to fit the crime There's no valid basis for comparison to the sentences of the two female co-defendants in this case Bannock and Hood Number one, they pled guilty to misdemeanor charges of conspiracy to commit criminal damage to property under 300 hours Were they actually smashing the mailboxes and not the two women? Your Honor, Bannock smashed one and Hood smashed none Bannock received, and Bannock also broke the car Bannock received 10 days, Hood received 6 The remainder of the 38 mailboxes were smashed by either the defendant alone Or the male co-defendant Teggenkamp alone or the two of them together Judge Teggenkamp estimated that about 10 to 20 were smashed by the two men together And the rest were smashed by one or the other of the two men So there's a difference in level of culpability between this defendant and the female co-defendants There's also the fact that this defendant was found guilty of the felony charge after trial While the female co-defendants pled guilty to misdemeanor charges And a sentence after a guilty plea, the courts of health does not provide a valid basis for comparison To a sentence entered after a trial for a co-defendant They were first asking, did he get a felony for him? The defendant in this case was convicted of felony conspiracy to commit criminal damage to property over $300 Right, and then he went to the jury trial though Was there any agreement to the two women, right? The two female co-defendants pled guilty, yes If you're asking whether it was an open plea or a negotiated plea, I don't know the answer to that, your honor I'm not sure that was in the record  There was a difference in the fact that the female co-defendants pled guilty and this defendant was found guilty after trial Also, the bannock testified against this defendant at trial, as did the male co-defendant Teggenkamp And of course that's another factor that can justify a lesser sentence So for these reasons, the people would ask the court to affirm both the conviction and sentence And I'd be happy to address any other questions that the court might have I think that's it, thank you Ms. Cannington and Mr. McQuaid, do you have a comment? Okay, please support In my brief, I just outlined on my fourth argument with regard to the inappropriate or then disproportionate sentencing The most important thing, I think, is all the way along, this gentleman had been offered a misdemeanor plea Take the misdemeanor, you know, you go along, you get out of here, we're done We have a constitutional right to a jury trial, he availed himself of that right He was a problem, there was no question about it If he gets a sentence that is 13 times more than one of the persons who has more criminality than he has Another one gets 7.8% more time in jail than the other lady And she has criminality and he has not How is that not disproportionate? If you do what we ask you to do, if you don't use your constitutional right to have a jury trial Then we're going to go easy on you, we're going to reduce this misdemeanor and you're all going to walk away But if you have a trial and you make us go through this trial And you continue to be a problem to the system, we're going to punish you It seems pretty straightforward based on the way you could read the record And that's what happened to him, he was punished because he had a jury trial He was punished because he fired his attorneys It would have been a close call if he had a criminal record If he had a misdemeanor conviction, if he had a felony conviction, if he had any kind of criminal record It would have been hard to distinguish him from the two female co-defendants But you can distinguish them because they had no right This is entirely disproportionate, it was entirely too much Based on that I ask you to remand him for a new trial and or new sentence Thank you again for your patience Thank you, thank you both for your points and arguments We'll take a stand on your advisement